LOGUE, J.
A general magistrate issued a report recommending that Eddy Rodriguez (“the Father”) receive a reduction in his child support obligations. On reviewing exceptions to the general magistrate’s report filed by Mayra Reyes (“the Mother”), the trial judge rejected the general magistrate’s recommendation. Because the trial court engaged in re-weighing the evidence in its review of the magistrate’s findings, we reverse.
FACTS AND PROCEDURAL BACKGROUND
On July 6, 2011, the Father filed the petition for modification of child support which is at issue in this appeal. He contended his child support obligation should be lowered because his income had been substantially reduced since the time when the obligation was last determined. The trial judge referred the matter to General Magistrate Yadira Pedraza, who conducted an evidentiary hearing on February 23, 2012.
At the hearing, the parties fiercely contested the issue of whether the Father had suffered a reduction in income. The Father, who is an officer on the City of Miami Police Force, testified his income was reduced because he retired from the Special Weapons And Tactics unit; he no longer worked in the Field Training Program or Crisis Intervention Program; the City changed its policies to require him to deduct more from his paycheck for retirement and certain gasoline expenses; the City cut back on overtime pay; and he was effectively prevented from working off-duty based on new City policies. He submitted financial affidavits showing that his net monthly income fell from $5,115.42 in 2008 to $3,985.96 in 2012.
The Mother, however, pointed to the existence of certain substantial deposits made into the Father’s checking account from sources other than the Father’s paycheck. A witness also testified for the Mother that he had seen the Father working off-duty. The Mother asserted that the deposits indicated that the Father’s income was not reduced. The Father responded that the deposits were the results of (1) transfers from his savings account; (2) money lent to him by his father; (3) an Internal Revenue Service refund; and (4) cash that his parents received from a dry cleaning business that they operated out of their home, which monies they deposited into the Father’s account because they were not permitted to earn money while collecting Social Security benefits.
After hearing the testimony of the witnesses and reviewing the evidence submitted, General Magistrate Pedraza issued a detailed, six-page report, which contained findings and recommendations. On the issue of the conflicting evidence with respect to the Father’s alleged reduction in income, she found for the Father, as follows:
8. The Court finds that the testimony of the Mother’s only witness to be unconvincing and the fact that the Mother met the witness a month before the hearing makes this Court even doubt more the credibility of the witness. The Court finds that even in the event that the witness testimony would have been convincing, the witness testified that the Father had not done any off duty work since June of 2011 which is consistent with the testimony presented by the Father in this case. Furthermore, no testimony was presented by the witness as to how much monies alleged paid by the *673 Father and accordingly the witness had no actual knowledge of what monies were paid to the Father if any for his off duty work before June of 2011.
9. The Court finds the testimony of the Father to be credible as it pertains to his monthly gross income in the amount of $5,409.26 and his net income of $3,985.96 as reflected in Financial Affidavit of February 2nd, 2012 and Child Support Guidelines attached hereto.
10. The Court finds the testimony of the Father as it pertains to his parents having a small business of a dry cleaner’s on the side to help them support themselves to be credible. The Court finds the testimony of the Father as it pertains to the additional monies being deposited in his bank account being his parent’s money to be credible. The Court finds that said additional monies were not a gift from his parents and that the Father was simply depositing the monies on behalf of his parents and has had to borrow from those monies to cover his monthly expenses.
The general magistrate recommended the Father’s monthly child support obligation should be reduced from $927.00 to $377.24.
The Mother filed exceptions to the general magistrate’s report. The trial court conducted a hearing on the exceptions on April 30, 2012. Essentially, the Mother asserted error in the general magistrate’s order primarily by pointing to alleged inconsistencies in the Father’s testimony before the general magistrate and the Father’s failure to produce witnesses to corroborate his explanation for the deposits. The trial court subsequently issued an order granting in part the Mother’s exceptions to the general magistrate’s report, which states, in pertinent part:
The court finds that the testimony and evidence is insufficient to sustain a finding that the monthly child support should be lowered, as the record does not reflect a true reduction in income.
This appeal followed.
ANALYSIS
Although trial courts typically are charged with the task of making certain factual findings and legal determinations in the first instance, “[o]nce a trial court appoints a magistrate to take testimony and make findings, it loses the prerogative of substituting its judgment for that of the magistrate.” Cerase v. Dewhurst, 935 So.2d 575, 578 (Fla. 3d DCA 2006); see also Ward v. Dones, 90 So.3d 826, 827 (Fla. 3d DCA 2012), reh’g denied, (May 30, 2012). In such instances, a trial court reviewing a magistrate’s findings and recommendations takes on a role similar to that of an appellate court reviewing a trial court’s actions. Cerase, 935 So.2d at 578. Where, as here, exceptions to the magistrate’s report have been filed, “a trial court reviews the record to determine whether the magistrate’s factual findings and conclusions are supported by competent substantial evidence, and whether the magistrate’s legal conclusions are clearly erroneous or whether the magistrate misconceived the legal effect of the evidence.” Id.
In this case, the record reflects that the magistrate’s factual findings were supported by direct testimony. The financial affidavits submitted by the Father indicated that his income was reduced. The main evidence which arguably conflicted with the Father’s testimony in this regard concerned the deposits made into his checking account from sources other than his paycheck. On that issue, the parties presented conflicting testimony. The only way to conclude there is no “true reduction in income” here is to discredit the testimony of the Father. The general magistrate, however, fully credited the Father’s expía- *674 nation. ■ Witness credibility, like all disputed issues of fact, is a determination left to the finder of fact. Boucicaut v. Fla. Unemployment Appeals, 929 So.2d 619, 620 (Fla. 3d DCA 2006) (“Credibility of a witness and the weight to be given to the evidence presented is, however, within the sound discretion of the fact finder.”).
CONCLUSION
While, based upon his years of experience, the trial judge may well have weighed the evidence differently if the testimony had been presented to him, his role in reviewing the general magistrate’s report was strictly limited. Because the general magistrate’s report and recommendation was supported by the Father’s testimony, it met the competent substantial evidence standard. For this reason, we reverse the decision and remand for further proceedings consistent with this opinion.
Reversed and remanded.